UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM A. HAMILTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CV-97-P-1037-S |
| -vs.- | ) | |
| | ) | |
| MILES COLLEGE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

The defendant filed this summary judgment motion on April 7, 1998. The court heard oral argument on the motion on June 26, 1998, and thereafter took the motion under submission. For the reasons expressed below, the defendant's motion is due to be granted as to all claims other than the religious discrimination claim.

### Facts[1]

The plaintiff, William A. Hamilton, began working for the defendant, Miles College, in August of 1995 as a part-time instructor in the Department of Social Work. According to the President of Miles College, at the time the plaintiff was initially hired, the plaintiff verbally represented that he held a Masters of Social Work (MSW) and submitted a resume that listed a MSW degree. The plaintiff, however, argues that he informed the university president that he was two courses short of completing his MSW degree. In any event, the defendant hired the plaintiff as a part-time instructor. In January of 1996, the plaintiff assumed additional duties as the Director of Residence Life for Men, a position that also made him the Director of Murchison Hall, the men's dormitory on campus.

---

[1]The facts are presented in the light most favorable to the non-moving party.

2

The plaintiff's direct supervisor was Carolyn Ray, the Dean of Student Affairs. Rufus Biggs, the Director of Residence Life, was the plaintiff's immediate supervisor from January 1996 until July of 1996. Among the plaintiff's job responsibilities as dorm director, he was in charge of monitoring the dormitory and ensuring its overall safe and orderly operation. Because the plaintiff is an ordained minister with certain ministerial duties on Sundays, the university granted the plaintiff's request to not work on Sundays. However, the defendant asserts that the plaintiff was informed that he would be required to work on the Sundays when the dorms opened and closed for the semester. The plaintiff claims that he was told that he would not ever have to work on Sundays but was required to work on three Sundays in 1996.[2]

On Saturday, August 10, 1996, the day before the dorms were scheduled to open for the fall semester, Dean Ray inspected the plaintiff's dormitory along with Diana Knighton, the business manager of the college. Finding it in unacceptable condition, Ray became upset with the plaintiff and suspended him.[3] On August 11, 1996, the plaintiff wrote a letter to Dean Ray concerning the "constant vulgarity, profanity, harassment, and unprofessionalism" and sent copies of the letter to the university president and Chairman of the Board of Trustees.[4] At the time of his suspension, the

---

[2] According to his deposition, the plaintiff was required to work on March 31, 1996, August 4, 1996, and August 11, 1996. On March 31, the dorm re-opened for students returning from Spring Break, on August 4, band members and football players moved into the dorms, and on August 11, all other students moved in for the start of the semester.

[3] The plaintiff was officially notified of his suspension by letter on August 12, 1996.

[4] The plaintiff admits that the defendant could not have received the letter until August 12, 1996, at the earliest.

3

university president, Dr. Sloan, was away form the campus.[5] Upon Dr. Sloan's return on Monday, August 19, Dean Ray notified Sloan of her suspension of the plaintiff. Sloan met with the plaintiff and suggested that the plaintiff request a hearing on the charges. The plaintiff, however, declined to request a hearing. Sloan allowed the suspension to remain but reinstated the plaintiff's pay. On October 1, 1996, he plaintiff tendered his letter of resignation.

The plaintiff claims that from the time he became Director of Residence Life for Men he was subjected to harassment by Dean Ray. Although the plaintiff alleges that Ray "often used vulgarity and spoke to the men employees in a demeaning manner, "[6] the plaintiff can only point to small number of specific instances of such treatment. On one occasion, the plaintiff alleges that Ray caressed the shoulder and back of the plaintiff without his permission and stated, "I get my way."

The plaintiff filed this lawsuit on April 28, 1997, asserting claims for sexual harassment (hostile work environment and retaliation) and religious discrimination in violation of Title VII.

### Analysis

#### I. Sexual Discrimination - Hostile Work Environment

To establish a prima facie case of hostile work environment, a plaintiff must prove that: (1)

---

[5] The plaintiff complains not only of constructively discharge, but of other retaliatory acts by Dean Ray as well. The dean also instructed the campus police to retrieve the plaintiff's keys to the dorm and to not allow the plaintiff to come onto the campus. The plaintiff was still living on campus at this time.

[6] The plaintiff asserts that he was subjected to inappropriate name calling such as "baby" and "sweetheart" by Dean Ray on a regular basis. Furthermore, the plaintiff says that Ray directed such words as "motherfuck," "shit," "damn," "son of a bitch," and "I'll fire your ass" on a regular basis. According to the plaintiff, this type of language was directed at men under the authority of Dean Ray at least two to three times a week. Female employees were not subjected to similar treatment by Ray, claims the plaintiff.

4

the employee belongs to a protected group, (2) the employee was subjected to unwelcome sexual harassment, (3) the harassment complained of was based upon sex, (4) the harassment complained of affected a term, condition, or privilege of employment, and (5) the employer knew or should have known of the harassment. See Henson v. City of Dundee, 662 F.2d 897, 903-04 (11th Cir. 1982). In determining what constitutes actionable sexual harassment, courts have adopted a totality of the circumstances approach. See Harris v. Forklift Systems, Inc., 114 S.Ct. 367 (1993). Factors such as frequency, severity, physical threat, and amount of unreasonable interference should be considered by the court when determining if a plaintiff's claim is actionable. See id.

In this case, the basis of plaintiff's claim for sexual harassment arises from Dean Ray's alleged use of foul language, one instance of improper touching, threats of termination, and other acts of "non-support." The use of foul language alone, however, is not enough to support a Title VII claim. The use of the language must somehow be connected to some type of discriminatory activity. Simply put, the evidence presented by the plaintiff does not rise to the level of actionable sexual harassment. While it is evident that the plaintiff and Dean Ray enjoyed less than an ideal working relationship, there is no evidence that the plaintiff's work environment was so permeated with intimidation or hostility as to alter a term, condition or privilege of his employment. Any reasonable jury would find that the plaintiff did not present a prima facie case. Because there are no genuine issues of material fact to put before a jury, summary judgment is due to be granted to the defendant on the sexual harassment claim.

II. Sexual Harassment - Retaliation

As with the plaintiff's hostile environment claim, the retaliation claim is also due to be dismissed. To establish a prima facie case of retaliation, a plaintiff must show that: (1) the employee

5

engaged in protected conduct, (2) the employer was aware of the employee's conduct, (3) the employee suffered an adverse employment action, and (4) there is a causal connection between the protected activity and the adverse employment action. See Reynolds v. CSX Transportation, Inc., 115 F.3d 860, 868 (11th Cir. 1997). Here, the plaintiff claims that he was constructively discharged after he complained of Ray's allegedly abusive conduct, and that he was "banned" from the campus and "harassed" for his dormitory keys after his suspension. However, the evidence shows that Dean Ray suspended the plaintiff on August 11, 1996, the day she toured the men's dormitory and found it unsatisfactory. The plaintiff's letter in which he complains of Ray's allegedly harassing behavior was not sent until August 12, 1996, the day after the plaintiff was suspended by Ray. When the president of the university discussed the suspension with the plaintiff a short time later, the plaintiff refused to participate in a grievance hearing. Instead, the plaintiff filed his letter of resignation. Even assuming, for the purposes of this summary judgment motion, that the plaintiff was "terminated," the defendant has presented a legitimate, non-discriminatory reason for suspending the plaintiff. Dean Ray suspended the plaintiff after finding that his dormitory was not prepared for the opening of the fall semester, and the plaintiff has not shown evidence to establish that the defendant's reasons were pretexts for discrimination. The same rationale applies to the plaintiff's retaliation claim for harassment in retrieving his dormitory keys and requiring him to remain off campus after his suspension. The defendant's motion for summary judgment is due to be granted on the retaliation claim.

## III. Religious Discrimination

Title VII prohibits an employer from discriminating against an employee on the basis of that employee's religion. See 42 U.S.C. § 2000e-2(a)(1). "All aspects of religious observance and

6

practice, as well as belief" are protected by the statute "unless an employer demonstrates that he is unable to reasonably accommodate . . . employee's religious observance of practice without undue hardship on the conduct of the employer's business." See Beadle v. Hillsborough County Sheriff's Dept., 29 F.3d 589, 591-92 (11th Cir. 1994) (quoting 42 U.S.C. § 2000e(j)). Because the terms "reasonably accommodate" and "undue hardship" are not clearly defined in Title VII, courts look at religious discrimination claims on a case-by-case basis. See Beadle, 29 F.3d at 592; United States v. City of Albuquerque, 545 F.2d 110, 114 (10th Cir. 1976), cert. denied, 433 U.S. 909 (1977).

In this case, the plaintiff claims that Miles College discriminated against him on the basis of his religion by requiring him to work on three Sundays during 1996. The three Sundays of which the plaintiff complains, however, were three days on which his dormitory opened for the semester. According to the defendant, it was the plaintiff's job to be physically present and on duty when the dorm opened and closed. While the university accommodated his request to have most Sundays off so that he could perform his ministerial duties, the plaintiff asserts that the university should have never required him to work on Sundays at all.[7]

After reviewing the evidence in this case, the court finds that there are genuine issues of material fact which preclude summary judgment from being granted on this claim. The defendant's motion is due to be denied as to plaintiff's claim for religious discrimination.

## Conclusion

For the forgoing reasons, the court finds that the defendant's motion for summary judgment

---

[7] The plaintiff asserts that he was told by President Sloan that he would not be required to work on Sundays. In her deposition, however, Dean Ray testified that the plaintiff was told before he was hired as dorm director of his responsibilities with regard to the opening and closing of the dorms. According to Ray, the plaintiff responded by stating that he had no problem working during on those Sundays.

7

is due to be granted in part. The case should proceed to trial on the religious discrimination claim alone.

Date: ___March 8___, 1999.

_____

Chief Judge Sam C. Pointer, Jr.

Service List:

8